```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| SHERRY LAZETTE THORNE, | : | CIVIL ACTION |
| | : | No. 13-2139 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, ACTING | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                June 3, 2015

## I.   INTRODUCTION

Sherry Lazette Thorne ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the decision of Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("the Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). Upon consideration of the administrative record, submitted pleadings, and the Report and Recommendation and objections thereto, the Court will overrule Plaintiff's objections, adopt the Report and Recommendation, and grant judgment to the Commissioner.

## II. BACKGROUND AND PROCEDURAL HISTORY

The following undisputed facts are drawn from the Report and Recommendation issued by Magistrate Judge Lynne A. Sitarski ("Judge Sitarski"):

> Plaintiff was born on May 11, 1958, and was fifty-four years old as of the date of the Administrative Law Judge's ("ALJ") decision. ([Administrative Record [hereinafter R.]] 33). Plaintiff attended college and received a four-year degree in Family and Consumer Science Education, i.e. "Home Economics." (R. 36-37). At the time of her hearing, Plaintiff was residing in a shelter in West Chester. (Id.). Plaintiff previously taught high school and worked in the kitchen at Camilla Hall Infirmary, cooking meals for the residents. (R. 37-39). At the time of her hearing, Plaintiff was working approximately ten to twenty hours per week as a telemarketer. (R. 41). She was paid eight dollars an hour. (Id.).
>
> On July 18, 2011, Plaintiff filed applications for DIB and SSI, alleging disability since October 20, 2008 due to depression, hip pain, lumbar spine impairment, severe back pain, and hypertension. (R. 197). Plaintiff's applications were denied on October 11, 2011, and on November 23, 2011, she requested an administrative hearing. (R. 108-18).
>
> On September 25, 2012, an ALJ held a hearing at which Plaintiff testified that she is unable to work because of persistent pain in her torso, knees, and back. (R. 43, 46). She stated that she has been taking Mobic for the pain, which has been helping "a little bit." (R. 47). Plaintiff testified that the pain is exacerbated by climbing stairs and sitting or standing for a long period of time. (R. 48). In terms of functional ability, Plaintiff told the court that she can walk about two blocks before needing to take a break, is able to stand for ten minutes, lift no more than eight to ten pounds, and can sit for about forty-

five minutes to an hour. (R. 50-52). Plaintiff also testified that she has asthma which affects her walking, but she continues to smoke one pack of cigarettes per week. (R. 57-58).

With respect to her mental health, Plaintiff indicated that she has been seeing a psychiatrist for depression once a month at Northwestern Human Services. (R. 53, 56). The psychiatrist prescribes medication for her and she has been seeing a therapist as well. (R. 56-57). Plaintiff told the court that she gets very sad thinking about her childhood and has had suicidal thoughts in the past. (R. 53). She sleeps a lot and watches television, and gets anxious and claustrophobic in a crowd of people. (R. 54-55). Plaintiff also testified that she takes public transportation to get to work, does her own laundry, goes to church, and performs chores in the shelter. (R. 60-62). Plaintiff stated that the last time she abused narcotic pain medications was about two years ago. (R. 68-70).

An impartial vocational expert [("VE")] also testified at the hearing. (R. 71). The ALJ asked the VE to consider a hypothetical individual the same age as Plaintiff, with the same education and work background, and who is limited to light work involving occasional exposure to fumes, dust, gases, odors, and changes in temperature and humidity, and is further limited to simple routine tasks, requiring little judgment, occasional contact with the public, coworkers, and supervisors, no working on assembly lines or in teams, and with little change in the work setting or work processes. (R. 74-75). Upon consideration of this hypothetical, the vocational expert determined that such individual could perform work as a garment sorter, bench assembler, and folder. (R. 75).

Consistent with her burden to produce evidence supporting her disability claim, see 20 C.F.R. § 404.1512; Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005), Plaintiff presented numerous medical records describing treatments and evaluations between March 2008 and July 2012. The records detail

Plaintiff's history of depression, knee injuries, back pain, asthma, obesity, and hypertension. The records also indicate that Plaintiff at one time suffered from a dependency on prescription painkillers.

. . . .

Based on this evidence, and on the testimony adduced at the hearing, the ALJ issued an opinion[1] on October 23, 2012 finding that Plaintiff has the following severe impairments: osteoarthritis of the left knee, asthma, depression, posttraumatic stress disorder, and obesity. (R. 21). The ALJ found that Plaintiff retains the residual functional capacity

---

[1] The Social Security regulations provide the following five-step sequential evaluation for determining disabled status:

(1) If claimant is working, doing substantial activity, a finding of not disabled is directed. Otherwise, proceed to Step 2. See 20 C.F.R. §§ 404.1520(b), 416.920(b).

(2) If claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise, proceed to Step 3. See §§ 404.1520(c), 416.920(c).

(3) If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise, proceed to Step 4. See §§ 404.1520(d), 416.920(d).

(4) If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise, proceed to Step 5. See §§ 404.1520(f), 416.920(f).

(5) The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. See §§ 404.1520(g), 416.920(g).

4

> [("RFC")] to perform a light range of work subject to several limitations, which led the ALJ to the conclusion that Plaintiff is not disabled within the meaning of the Social Security Act. (R. 23-26). On February 19, 2013, the Appeals Council denied Plaintiff's request for review. (R. 1-5).

Report and Recommendation 1-3, 9, ECF No. 14 [hereinafter R&R].

Plaintiff filed the instant complaint on April 22, 2013. ECF No. 1. The Commissioner filed an answer on June 21, 2013 (ECF No. 6), and Plaintiff filed a brief and statement of the issues in support of request for review on September 3, 2013 (ECF No. 9). The case was referred to Judge Sitarski on October 31, 2013 (ECF No. 13), and Judge Sitarski filed the Report and Recommendation on October 30, 2014, recommending that Plaintiff's request for review be denied (ECF No. 14). Plaintiff filed objections on November 4, 2014 (ECF No. 15), and the Commissioner responded on November 14, 2014 (ECF No. 17). The case is ripe for disposition.

**III. STANDARD OF REVIEW**

The Court undertakes a de novo review of the portions of the Report and Recommendation to which Plaintiff has objected.[2] See 28 U.S.C. § 636(b)(1); Cont'l Cas. Co. v. Dominick

---

[2] Although the Court has reviewed and will adopt Judge Sitarski's Report and Recommendation in its entirety, because Plaintiff specifically objected only to Judge Sitarski's

D'Andrea, Inc., 150 F.3d 245, 250 (3d Cir. 1998). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b)(1).

In reviewing the Commissioner's final determination that a person is not disabled and, thus, not entitled to Social Security benefits, the Court may not independently weigh the evidence or substitute its own conclusions for those reached by the ALJ. See Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Instead, the Court must review the factual findings presented in order to determine whether they are supported by "substantial evidence." 42 U.S.C. § 405(g); Rutherford, 399 F.3d at 552.

Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion." Rutherford, 399 F.3d at 552 (internal quotation marks omitted). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" Id. (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the ALJ's decision is supported by substantial evidence, the Court may not set it aside "even if [the Court] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

---

recommended finding concerning the ALJ's treatment of her obesity, the Court will limit its discussion to that issue alone.

## IV. THE ALJ'S FINDINGS

Applying the applicable five-step analysis, the ALJ issued the following findings, as summarized by Judge Sitarski:

> At step one, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since October 20, 2008, the alleged onset date. ([R.] at 20). At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis of the left knee, asthma, depression, posttraumatic stress disorder, and obesity. (Id. at 21). The ALJ also noted two nonsevere impairments, hypertension and drug/alcohol abuse (in remission), but determined that these impairments did not result in more than minimal limitations on Plaintiff's ability to perform work-related activities. (Id.). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 21). . . .
>
> At step four, the ALJ found that Plaintiff has the residual functional capacity . . . to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), except that she is limited to: occasional exposure to fumes, dust, gases, odors, humidity and changes in temperature; simple, routine tasks requiring little judgment; occasional contact with the public, co-workers, and supervisors; no working on assembly lines or in teams; and little changes in the work setting or work processes. (Id. at 23). In reaching this determination, the ALJ considered Plaintiff's testimony but found that it was not fully credible because "[t]he evidence as a whole, including the medical evidence and the claimant's noted activities of daily living, do[] not support the claimant's allegations." (Id. at 24). The ALJ also considered the examining source statements from Dr. Schwartz and Dr. Shapiro, but gave their opinions little weight because they were not supported by the doctors' own examinations reports. On the other hand,

the ALJ afforded great weight to the mental RFC assessment completed by a state agency medical consultant because it was consistent with the mental status examinations in the record. (Id.).

The ALJ determined that Plaintiff was unable to perform past relevant work as a secondary school teacher and mess cook, and therefore proceeded to the fifth and final step in the analysis. (Id.). Relying on the opinion of a vocational expert, the ALJ determined that Plaintiff could perform the duties of a garment sorter, bench assembler, and folder. (Id. at 26). Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, from October 20, 2008 through the date of the ALJ's decision. (Id.).

R&R 11-13.

## V. DISCUSSION

Plaintiff disagrees with Judge Sitarski's conclusions as a whole--but specifically objects only to Judge Sitarski's recommended finding concerning the ALJ's treatment of her obesity. Because Judge Sitarski correctly found that the evidence presented in the case, "including medical records and Plaintiff's testimony, would not support a conclusion that Plaintiff's obesity--either individually or in combination with her other impairments--rendered her unable to work," R&R 17, the Court will overrule Plaintiff's objection and adopt Judge Sitarski's Report and Recommendation.

In her objection, Plaintiff points out that "[t]he Magistrate Judge concedes that the ALJ failed to properly consider Plaintiff's obesity." Pl.'s Objection 1. Plaintiff argues that this error was not harmless, but in fact "requires a reversal of the ALJ's decision." Id. The relevant passage of Judge Sitarski's Report and Recommendation reads as follows:

> Here, the ALJ identified obesity as a severe impairment, acknowledged his regulatory obligation to consider Plaintiff's obesity, and then stated that "[t]hese considerations have been taken into account in reaching the conclusions herein at the 2nd through 5th steps of the sequential disability evaluation process, even though no treating or examining medical source has specifically attributed additional or cumulative limitations to the claimant's obesity." (R. 21). Notably, however, although the ALJ stated that he had considered Plaintiff's obesity at steps two through five, he did not mention Plaintiff's obesity again anywhere else in his decision. This was error. See Diaz[v. Comm'r of Social Security], 577 F.3d [500, 504 (3d Cir. 2009)] (holding that ALJ erred by finding that plaintiff's obesity was a severe impairment, but failing to clarify how her obesity factored into the decision as to plaintiff's functional capacity); Buchanan v. Colvin, [No. 11-4597, ]2014 WL 351577, *2 (E.D. Pa. Jan. 30, 2014) (explaining that, even though the ALJ spoke generally about her obligation to consider obesity and stated that she had considered all of the plaintiff's impairments, these statements, by themselves, were insufficient to apprise the court of the ALJ's rationale as to what role plaintiff's obesity played in her decision).

> The Court concludes, however, that this error was harmless because the evidence, including medical records and Plaintiff's testimony, would not support a conclusion that Plaintiff's obesity--either individually or in combination with her other impairments--rendered her unable to work. See Suarez

9

v. Astrue, 996 F. Supp. 2d 327, 332 (E.D. Pa. 2013) (finding that remand was not necessary even though ALJ failed to analyze the impact of plaintiff's obesity on her functional abilities because the evidence, including medical records, application forms, and plaintiff's testimony, would not support a conclusion that her obesity rendered her unable to work); Brown v. Astrue, 789 F. Supp. 2d 470, 483-84 (D. Del. 2011) (finding that ALJ's failure to provide an in-depth discussion of the effects of plaintiff's obesity did not require remand because plaintiff did not point to any record evidence purportedly omitted by the ALJ relating to her obesity)[;] Neff v. Astrue, 875 F. Supp. 2d 411, 423 (D. Del. 2012) (finding no basis to remand where plaintiff failed to direct the court to any evidence in the record in support of a finding that obesity worsened her symptoms).

R&R 17. Although Judge Sitarski recognized that the ALJ's failure to specifically analyze Plaintiff's obesity at steps four and five constituted error under Diaz, Plaintiff "strenuously objects" to Judge Sitarski's claim that this error was harmless. Pl.'s Objection 2.

 In Diaz, the Third Circuit noted that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." 577 F.3d at 504. Remarking that the claimant's "morbid obesity would seem to have exacerbated her joint dysfunction as a matter of common sense, if not medical diagnosis," id. at 504, the Court held that the ALJ's failure to thoroughly analyze the claimant's obesity constituted error warranting remand. Id. at 504-05.

Quoting Diaz, Plaintiff here urges that "common sense" dictates that "the same is true of this claimant whose severe knee osteoarthritis is acknowledged by the ALJ." Pl.'s Objection 3. But that is not a leap of logic that this Court is willing to make, as the evidence in the record simply does not support a finding that the claimant's obesity rendered her unable to work.

In confronting a factual record essentially on all fours with the instant case, the district court in Suarez aptly distinguished the situation in Diaz as follows:

> In Diaz, when considering a 4'[]11" claimant who weighed 252 pounds, and claimed joint pains, the Court of Appeals for the Third Circuit urged the use of "common sense" to find that the claimant's weight exacerbated her joint dysfunction. 577 F.3d at 504. The ALJ must, however, limit the exercise of common sense to the analysis of the evidence of record. If an ALJ were to claim that "common sense" led in a direction where the evidence did not follow, he would simply be substituting his opinion for that of the medical experts, which is not permitted. Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000).

996 F. Supp. 2d at 332. The court in Suarez went on to observe that there was little mention of the plaintiff's obesity in the record, and she made no reference to any impact that her weight had on her in the extensive discussions she had with the ALJ regarding her physical capacities. Id. Because the plaintiff did "not point[] to any evidence in the record which would support [her] claim," the court concluded that it "[could not] remand

the ALJ's decision based on the failure to confront evidence that does not exist." Id. at 333 (quoting Neff, 875 F. Supp. 2d at 423) (internal quotation marks omitted).

The Suarez court's reasoning is directly applicable to the instant case--and the evidence supporting Plaintiff's objection is similarly scant. Although Plaintiff's doctors recorded her weight in their reports, none of them indicated that it affected her other symptoms. For instance, Dr. Banadda described Plaintiff's appearance as "obese" a few times, and observed that he had advised dieting and exercise--but no evidence in the record suggests that Dr. Banadda believed her obesity worsened her other impairments. See R. at 272, 286, 290, 293, 295, 297, 300. Dr. Shapiro's one reference to Plaintiff's obesity noted that her appearance was "overweight," but otherwise "within normal limits." R. at 304. And finally, neither Dr. Schwartz nor Dr. Smith made any mention of Plaintiff's obesity in their reports. R. at 254-265, 310-14. Plaintiff does not contest this in her objection, nor does she point to any other instances in the medical evidence referring to her obesity.

At Plaintiff's hearing before the ALJ, Plaintiff made no mention of her obesity, other than stating her height and weight, and noting that she had gained about twenty-five pounds in eight months because of her medication. R. at 34. Although

12

Plaintiff described to the court the pain she experiences in her knees, torso, and back, she did not allege that her obesity exacerbates the pain. R. at 43-48. Despite extensive discussion of her physical capabilities, Plaintiff did not mention any impact that her weight has had on her capacity to work. See R. at 50-52. Again, Plaintiff does not contradict this reading of the record.

Accordingly, even though the ALJ erred in failing to discuss the effect of Plaintiff's obesity upon her ability to perform work-related functions, the error was indeed harmless. Moreover, Plaintiff has failed to point to any evidence in the record that supports a finding that obesity worsened her symptoms or impacted them in any way--and the Court ought not and will not "remand the ALJ's decision based on the failure to confront evidence that does not exist." Neff, 875 F. Supp. 2d at 423.

**VI.   CONCLUSION**

For the reasons set forth above, and because Judge Sitarski correctly found the ALJ's decision to be supported by substantial evidence, the Court will overrule Plaintiff's objection and adopt the Report and Recommendation, awarding judgment to the Commissioner. An appropriate order follows.